NICOLA T. HANNA
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
CHARLES E. PELL (Cal. Bar No. 210309)
Assistant United States Attorney
Santa Ana Branch Office
    Ronald Reagan Federal Bldg. & U.S. Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3542
    Facsimile: (714) 338-3561
    E-mail:    Charles.E.Pell2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DONGYUAN LI,<br><br>    Defendant. | No. SA CR 19-00016-JVS<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO REVOKE MAGISTRATE COURT'S DETENTION ORDERS (DE 43)**<br><br>Hearing Date: 04/08/2019<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the<br>    Hon. James V. Selna<br>    (Courtroom 10C) |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Charles E. Pell, hereby files its Opposition to defendant's motion to revoke the Magistrate Court's detention Orders (DE 43).

    As discussed in the attached memorandum of points and authorities, the Magistrate Court did not err when it found twice – after two different detention hearings – that the government met its burden to establish by a preponderance of the evidence that defendant

is a flight risk such that no conditions of release will assure her presence at trial, so this Court should not disturb the Magistrate Court's detention Orders.

Moreover, defendant also filed in support of this appeal defense counsel's declaration (DE 43-1) that proffers the contents of a communication between defense counsel and defendant in January 2019. Therefore, by separate motion filed concurrently herewith, the government moves that this Court find a partial waiver of the attorney-client privilege on the subject matter of that waiver, and order defense counsel to be prepared to testify (and face cross examination) on those facts that they proffered in the declaration.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 2, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

    /s/
CHARLES E. PELL
Assistant United States Attorney
Santa Ana Branch Office

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This Court should deny defendant Dongyuan Li's (defendant) appeal of the Magistrate Court's detention Orders. As discussed during the detention hearings and in detail in the government's previous filing (which it incorporates herein), as well as *infra*, defendant is a serious flight risk, so the Magistrate Court did not err in finding – twice – that there are no conditions of release to ensure defendant's appearance at trial.

Nothing in defendant's most recent motion challenging her detention calls into question any of the multiple bases the Magistrate Court found to support its conclusion that defendant was a flight risk where no conditions of release would ensure her presence at trial. Defendant is a serious flight risk because she has: (1) extensive foreign ties to the People's Republic of China, both familial and financial, where she has lived for most of her life, compared to limited ties to the United States; (2) the means to flee, based on her and her husband's wealth; (3) extensive knowledge and experience in international travel and bypassing U.S. immigration controls; and (4) the incentive to flee, based upon the prison time she is facing, including mandatory minimum consecutive sentences under 18 U.S.C. § 1028A. Last, the relevant facts show defendant is not similarly situated to other defendants who were not detained.

**II. PROCEDURAL BACKGROUND**

On January 30, 2019, the federal Grand Jury in Orange County indicted defendant for conspiracy, visa fraud, wire fraud, international money laundering, identity theft, and aggravated identity theft. (DE 1.)

On February 5, 2019, after hearing argument and reviewing the evidence, the Magistrate Court ordered defendant permanently detained pending trial. (DE 18.) Among the reasons the Magistrate Court found that defendant was a flight risk, it noted:

- Chinese citizen;
- No legal status in the U.S.;
- Husband, young children, business all in China;
- Economic means to travel;
- Knowledge of international travel; and
- Twins left in summer 2018 with passports obtained after agent seizure and based on lie in passport applications.

After additional briefing and a second detention hearing, on May 7, 2019, the Magistrate Court denied the defendant's motion for reconsideration of its initial detention ruling. (DE33 (minutes).)

Last week, on March 27, 2019, defendant filed the instant appeal of the Magistrate Court's detention decisions. (DE43.)

**III. ARGUMENT**

    **A.   Summary**

The government opposes defendant's latest request for pretrial release, and hereby incorporates the arguments from its prior opposition. (DE30 (opposition to motion for reconsideration).)[1] Defendant's rehashed arguments previously rejected by the Magistrate Court fail to call into question the Magistrate Court's correct determination that defendant should be detained.

The facts establish that defendant is a serious flight risk. If released on bond, she will almost certainly flee to China, much like

---

[1] See also DE19 (transcript of 02/05/19 detention hearing); DE36 (transcript of 03/07/19 detention hearing).

2

her co-schemer Chao Chen, her birth tourism customers, and other birth tourism customers from related investigations did. Defendant is a Chinese national with no permanent U.S. immigration status. She has extensive ties to China, where she was born and has lived for most of her life. Most of her family lives in China, including her foreign national husband (charged in a related case), her two U.S.-born young children (at the time she was charged/arrested), and her siblings.[2] She and her husband have the means for defendant to easily flee to China. Defendant has extensive knowledge and experience in international travel, and the Indictment against her details the extent of her international immigration fraud. Moreover, as detailed below, during recorded conversations, defendant not only instructed others how to trick U.S. Customs, but she also referred to U.S. immigration as "foreigners," which gives this Court some insight as to what she perceives her ties to the United States to be. Last, defendant's attempt to obtain her Chinese passport and lies on the U.S. passport applications for her twins indicate that defendant cannot be trusted to abide by any conditions of release.

Thus, the government has met its burden to establish – by much more than a preponderance – that defendant is a flight risk where no conditions of release will assure her presence at trial.

**B. The standard of proof is preponderance of the evidence.**

Pretrial detention of a defendant is appropriate where that defendant is a flight risk. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985); <u>United States v. Kouyoumdjian</u>, 601 F.2d

---

[2] Defendant's eldest daughter, who was born in China and is not a U.S. citizen, and defendant's 1 ½ year-old U.S.-born son currently live in Irvine with defendant's mother (who was granted asylum by the U.S.) and formerly with defendant there.

3

1506, 1508-10 (C.D. Cal. 1985). A finding that a defendant is a flight risk need be supported by only a preponderance of the evidence. Motamedi, 767 F.2d at 1406.

The Ninth Circuit has identified several relevant factors in determining whether pretrial detention is appropriate: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986); Motamedi, 767 F.2d at 1407.

**C. This Court reviews *de novo* the Magistrate Court's ruling.**

Section 3145 authorizes the District Court to review the Magistrate Court's detention decision. 18 U.S.C. § 3145(b). This Court reviews that decision *de novo*. United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990). "Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." Id. at 1193. However, "the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate," and "the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." Id.

**D. Defendant has extensive ties to a foreign country (China) and limited ties to the United States.**

Defendant has extensive ties to China, including living there

4

for more than three decades, her husband lives there, her two siblings live there, and two of her U.S.-born children lived there since last year (apparently recently returning after she was arrested). In addition, she and her husband have substantial means in China. As detailed in the government's previous filing:

- Defendant is a Chinese national, and she lacks U.S. immigration status. (DE30 at 4);
- Defendant has extensive family ties to China, including a Chinese-national husband who has not returned to the United States in more than four years. (Id. at 4-6);
- Defendant has extensive economic ties to China. (Id. at 6); and
- Defendant has limited ties to the U.S., including referring to U.S. immigration as "foreigners." (Id. at 6-7).

**E. Contrary to the defense's new argument in its papers, all of defendant's children appear to be Chinese nationals.**

In its moving papers, the defense faults the Magistrate Court for "an incomplete understanding of Chinese immigration law" and argues that defendant's three children born in the United States are not Chinese citizens. (DE43 at 13 ("both children are United States citizens, *not* Chinese citizens" (emphasis in original)); 20-21 ("the Nationality Law of the People's Republic of China declines to confer Chinese citizenship on such persons.").) The defense failed to cite the complete Article of Chinese law that it raised, completely omitting the first sentence for some reason. Thus, the government quotes the entire Article, with the omitted portion shown in bold:

> **Any person born abroad whose parents are both Chinese nationals or one of whose parents is a Chinese national**

5

> **shall have Chinese nationality. But** a person whose parents are both Chinese nationals and have both settled abroad, or one of whose parents is a Chinese national and has settled abroad, and who has acquired foreign nationality at birth shall not have Chinese nationality.

("Article 5, Nationality Law of the People's Republic of China 2003/11/14").[3] Defendant proffers no evidence that defendant's husband has settled outside China (he has not been in the U.S. for four years, including missing his 1 ½ year-old son's birth here), so the exception to that Article's general rule that confers Chinese nationality to Chinese national parents does not appear to apply to the facts of this case. However, the omitted portion of the statute does clearly apply here: "Any person born abroad whose parents are both Chinese nationals … shall have Chinese nationality."[4]

### F. Defendant has the economic means to flee to China and extensive experience and knowledge of bypassing U.S. immigration controls on international travel.

Defendant and her husband are of extensive means - they have millions of dollars in China.[5] Defendant is not shy about using their wealth to perpetrate fraud against the United States. For example, Overt Act No. 21 of the Indictment details that defendant told her customer that she would transfer money from her account to

---

[3] Available at Consulate General of the People's Republic of China in New York, https://www.fmprc.gov.cn/ce/cgny/eng/lsqz/laws/t42221.htm (visited 04/01/2019).)

[4] In addition, defendant provides no actual evidence – such as a declaration – that her children are not Chinese nationals.

[5] During the 2015 search of defendant's residence, defendant's husband told federal agents he "had more than $10,000,000 in his bank accounts in China." (See Indictment, Count One, Overt Act No. 27.)

6

the customer's account to be used as proof of funds to qualify for a visa extension.  Count 2 charges defendant with that visa fraud, including the $96,800 that defendant transferred to that customer's account.[6]  If released on bond, defendant will surely put that wealth to use in fleeing to China.

Count 1 of the Indictment against defendant details an extensive immigration fraud scheme, including defendant's: coaching her birth tourism customers to lie to U.S. officials during the U.S. Consulate interview in China (Indictment ¶ 9(*l*)); coaching her birth tourism customers to deceive U.S. Customs by concealing their pregnancies (Id. at ¶ 9(m)); directing her birth tourism customers to take a non-direct flight through Hawaii in order to more easily bypass U.S. Customs (Id. at ¶ 9(n)); instructing her birth tourism customer to fabricate financial documents to qualify for a visa extension (Id. at ¶ 9(y)); and providing her birth tourism customer with someone else's flight itinerary, and directing her to make modifications to it so it could be shown as proof of a return to China (Id. at Overt Act 16).[7]

---

[6] According to the Pre-Trial Services report, defendant purchased various homes outright with no loan, including her Irvine residence for more than $2,000,000.  The report also notes that defendant claimed to have several bank accounts in China, but (curiously) said she did not know how much was in them.

[7] The government is confused by the defense's claim that "conspicuously absent is any significant allegation that Ms. Li *personally* participated in such coaching" of clients on how to avoid alerting U.S. immigration of the real reason for their travel. (DE43 at 21 (emphasis in original).)  The government does not understand how the defense characterizes a "significant" allegation versus an insignificant one within an Indictment.  Apparently, the defense does not believe "significant" that the Indictment alleges that defendant:

- "would coach their Chinese customers how to pass the U.S. Consulate interview in China, including by telling the customers to falsely say they were going to stay in the United States for only two weeks" (Indictment ¶ 9(*l*));

*(footnote cont'd on next page)*

1  Defendant's entire birth tourism scheme hinged on tricking U.S.
2  officials regarding the purpose of international travel.  Unlike
3  other frauds, those skills defendant possesses would be useful in
4  facilitating her flight from the U.S. to China.
5       Last, defendant recently attempted to secure the return of her
6  Chinese passport.  The Court can and should infer from that attempt
7  that defendant had planned to actually use that Chinese passport.
8  Obviously, passports are used primarily to travel internationally.[8]

**G.   Once defendant flees to China, it will be impossible to extradite her back to the United States to face trial.**

The U.S. lacks an extradition treaty with China.  One of

---

- "would coach their Chinese birth tourism customers how to pass the U.S. Customs inspection at the port of entry by concealing their pregnancies" (Id. ¶ 9(m)); and

- "left a voicemail message for a You Win USA customer to coach her through U.S. Customs, wherein defendant LI said: 'The main thing is they look and see if you look obvious [pregnant]; can they see it?  First thing is not to let them see it.  Second thing is don't deny it if they can see it, and just say that you're still here for vacation and just show them the return flight ticket." (Id. Overt Act No. 15).

The government disagrees.  Respectfully, the government believes that coaching a specific customer first to conceal her pregnancy, and if discovered, to then lie to the U.S. authorities about the purpose of the trip to the U.S. does constitute a "significant allegation that Ms. Li personally participated in such coaching."

[8] Characterizing it as "[p]erhaps the most compelling evidence" (DE43 at 9-10), defendant's continual harping that she did not already flee, offered as just another pillar in her argument that she is not a flight risk, is really just an idle pillar after considering the facts of this case, where no defendant had ever been indicted for operating a Chinese birth tourism scheme.  (Chao Chen pleaded guilty pre-indictment to an Information.) And that argument further crumbles when one attempts to square it with her subsequent argument about her Chinese passport, i.e., that her attempting to retrieve her Chinese passport was innocent and not indicative of flight, premised upon the notion that it had been almost four years since the government had seized her passport, so it would have been natural for her to "inquire **whether** the government's investigation was still ongoing." (Id. at 12 (emphasis added).)  Either defendant thought that she was about to be charged, or that the investigation was closed.  Not both.

8

defendant's own birth tourism customers who fled in violation of a Court Order put it succinctly: "Anyway, I'm already home.  U.S. can't do anything to me."  (Indictment, Count-1, Overt Act No. 32.)

Many Chinese nationals related to this case have already fled, including defendant's customers who were designated material witnesses in this very investigation, and 9 material witnesses from the "USA Happy Baby" case.  Defendant's co-schemer Chao Chen also fled to China, even after he had already pleaded guilty, taking his wife and his two children with him.  And if released, defendant will undoubtedly also flee to China.

**H.   In addition to her underlying fraud scheme, defendant also provided false information to federal authorities.**

Replacement U.S. passports: As noted in the PTS report, defendant obtained replacements for her children's U.S. passports, which had been seized during the March 2015 search.  Defendant provided false information to obtain those passports, writing that the reason she needed to obtain each of those replacement passports was that she could not remember where she had put them.  In light of the facts, defendant's excuses for those false statements fail.

Conflicting information provided regarding 1½-year-old: The updated PTS report indicates that during her arrest, defendant told agents that her 1½-year-old son was "adopted."  But, defendant then told a way different story to PTS when she ultimately interviewed.

**I.   Defendant has a strong incentive to flee because she faces many years in federal prison.**

In its moving papers, the defense claims that defendant "faces minimal prison time even if she is convicted."  (DE43 at 18 (capital letters modified).)  The charges and facts don't support that claim.

9

Based upon the several hundred false visa applications alleged in the Indictment, defendant's immigration fraud charges alone would result in a Guidelines offense level of at least 20. (U.S.S.G. §§ 2L2.1(a), (b)(2)(C)). That equates to 33-41 months of prison. Counts 23 through 25 of the Indictment charge defendant with aggravated identity theft for using three different identities as part of her scheme. Each such charge carries a mandatory minimum consecutive two-year term of imprisonment.

So, at a minimum – not even counting the wire fraud or money laundering offenses that would further increase defendant's offense level – defendant faces a Guidelines sentence of approximately 5 years in prison, which is not "minimal prison time" to most people.

Thus, the substantial amount of federal prison that defendant faces upon conviction gives defendant a serious incentive to flee to China, rather than remain in the U.S. to serve years in prison.[9]

**IV.  CONCLUSION**

Defendant is a flight risk. She operated a huge international immigration fraud scheme, which shows defendant can easily frustrate any safeguards and yeply flee to China. Defendant is a Chinese national with extensive ties to China – both familial and financial – and the means to flee. She was born in China and, other than the last several years in the U.S., lived there for her entire life. In addition to the means to flee, defendant has an overwhelming incentive to flee, given the long federal prison sentence she faces.

For the foregoing reasons, the government respectfully requests that this Court reject defendant's challenge to her detention.

---

[9] Even the many material witnesses who were not facing any prison fled to China in violation of Court Orders.

10