BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
  jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Defendant Dongyuan Li

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:19-cr-00016-JVS |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM**[1] |
| vs. | |
| DONGYUAN LI, | Judge:  Hon. James V. Selna |
| Defendant. | Date:   December 16, 2019 |
| | Time:   9:00 a.m. |
| | Crtrm.: 10C |

Defendant Dongyuan Li, by and through her counsel of record, Thomas P. O'Brien, respectfully submits the following sentencing memorandum.

---

[1] This document is filed pursuant to paragraph 4 of the Court's December 5, 2019 Order.  ECF No. 105.

1

## **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3   I.   INTRODUCTION .................................................................................... 1

4   II.   STATEMENT OF FACTS........................................................................ 2

5   III.   LEGAL STANDARD ............................................................................. 4

6   IV.   ARGUMENT ........................................................................................... 5

7       A.   The PSR Correctly Calculated the Sentencing Guideline Range ........... 5

8           1.   The Number of Fraudulent Visa Applications Does Not
            Exceed 24........................................................................................ 5

9
            2.   An Aggravating Role Enhancement is Inappropriate................... 6
10
        B.   Section 3553(a) Factors ......................................................................... 8
11
            1.   Nature of the Offense................................................................. 8
12
            2.   History and Characteristics of the Defendant............................. 8
13
            3.   Ms. Li's Near-Death Experience While in Custody.................... 8
14
    V.   CONCLUSION ...................................................................................... 11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Freeman v. United States*,
    564 U.S. 522 (2011) ............................................................................ 8

*Gall v. United States*,
    552 U.S. 38 (2007) ............................................................................. 9

*Hughes v. United States*,
    138 S. Ct. 1765 (2018)........................................................................ 9

*United States v. Cyphers*,
    130 F.3d 1361 (9th Cir. 1997) ......................................................... 12

*United States v. Helmy*,
    951 F.2d 988 (9th Cir. 1991) .......................................................... 12

*United States v. Murillo*,
    284 F. App'x 982 (3d Cir. 2008) (unpublished)............................... 11

*United States v. Petti*,
    973 F.2d 1441 (9th Cir. 1992) ......................................................... 11

**Statutes**

18 U.S.C. § 3553(a) ............................................................................. 9, 12

**U.S. Sentencing Guidelines**

USSG § 2L2.1(a) ................................................................................... 10

USSG § 2L2.1(b)(2)(A)......................................................................... 10

USSG § 3B1.1(b)................................................................................... 10

USSG § 3B1.1 cmt. nn. 2 ...................................................................... 12

USSG § 3E1.1(a) ............................................................................ 10, 11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Despite the government's frequent suggestion otherwise, this case is not about the legality of foreign nationals coming to the United States ("U.S.") to give birth, a practice known as "birth tourism."  The government has publicly confirmed both that birth tourism is legal and that the U.S. Department of State will issue a visa to foreign citizens to give birth in the U.S.  Carroll Decl. ¶ 2, Ex. A ("'As long as U.S. birthright citizenship is a right, it's not illegal . . . The State Department takes the position it will issue a visa to give birth.  You just have to be truthful about it.'").  Instead, this case is about whether the company for which Defendant Dongyuan Li worked, You Win USA, helped its clients lie on their visa applications.

As Ms. Li has admitted, You Win USA did help some of its clients lie on their visa applications.  She admitted that she: was generally aware that the company offered such a service to some clients; participated in the business by receiving, housing, and caring for company clients once they arrived in the United States; and assisted one of her personal friends in providing false information in a visa extension application.  Ms. Li has pleaded guilty to committing visa fraud, and she has already been incarcerated for over ten months as a result of her conduct—during which she was nearly killed by the gross misconduct of two correctional officers while in their custody.

But Ms. Li is not guilty of every accusation that the government has leveled at her.  That is, neither Ms. Li's role in the business, nor the number of fraudulent visas connected to You Win USA, was nearly as extensive as the government publicly trumpeted.  And after reviewing the discovery in this case and the detailed written submissions of both parties, the U.S. Probation and Pretrial Services Office ("Probation") reached the same conclusion.  Probation therefore correctly determined that an appropriate sentence in this case is **ten months' incarceration, a three-year period of supervised release, and a $200 special assessment**.  The

1  Court should fully adopt the findings of the Presentence Investigation Report

2  ("PSR") and sentence Ms. Li in accordance with its recommendation.

3  **II.      STATEMENT OF FACTS**

4          Ms. Li is a mother to a teenage daughter, twin six-year-old daughters, and an

5  infant son.  PSR ¶ 88, ECF No. 92.  Ms. Li and her husband, Qiang Yan, first came

6  to the United States in approximately April 2013, at which time they met Chao

7  Chen.  *Id.* ¶ 91.  At the time, Mr. Chen was running his own birth tourism business

8  called "7 Star Maternity Home."  *Id.* ¶ 51(c).  Around September 2013, sensing that

9  Ms. Li and Mr. Yan were "friendly" and "approachable," Mr. Chen pitched Mr. Yan

10 on investing in his business.  *Id.*  Mr. Yan agreed and invested approximately

11 USD$150,000.  *Id.* ¶ 51(c), (d).  In exchange, Mr. Yan and Mr. Chen—but not Ms.

12 Li—became co-owners of the business, *id.* ¶ 43, which was later renamed You Win

13 USA.[2]  In his later interview with federal agents, Mr. Yan stated that he invested in

14 Mr. Chen's business primarily as a way to befriend him so that he would help take

15 care of Ms. Li while Mr. Yan was not in the country.  *Id.* ¶ 51(d).

16         Following Mr. Yan's investment, Mr. Chen continued to run all day-to-day

17 operations of the business.  This included securing new clients, housing the pregnant

18 clients in the U.S., arranging doctor visits, procuring nanny services, planning client

19 outings, and so on.  Ms. Li, on the other hand, had a much smaller role in the

20 business at the time.  During 2013, she received wire transfers from China—some of

21 which were intended to support You Win USA, but most of which were her and her

22 husband's personal funds to be used for purchasing a personal home in Irvine.  PSR

23 ¶ 51(i), (q).  Eventually, the money used to support You Win USA was wired

24 directly to Mr. Chen instead of Ms. Li.  PSR ¶ 51(i).  Ms. Li also made certain

25 purchases on behalf of the business during 2013, such as making two rent payments

26 _____

27         [2] When Mr. Chen registered You Win USA with the California Secretary of
   State, he identified himself as the Chief Executive Officer, Secretary, Chief
28 Financial Officer, and agent for service of process of the company.  PSR ¶ 20 n.1.

1  for client housing.  PSR ¶¶ 27, 29, 51(i).  She at one point provided rudimentary

2  financial auditing for the business.  *See* PSR ¶ 51(l).

3       In April 2014, Lili Li joined You Win USA and became a co-owner of the

4  business with Mr. Yan and Mr. Chen.[3]  *Id.* ¶¶ 43, 46, 51(f).  Lili Li eventually took

5  charge of You Win USA's operations in China, *id.* ¶ 32, which included recruiting

6  new clients from China, *id.* ¶ 51(f), and handling any visa-related inquiries by those

7  clients, *id.* ¶ 51(s).  Toward the end of 2014, after the business appeared not to be

8  making any profit, Lili Li came to the United States to conduct an audit of You Win

9  USA.  *Id.* ¶ 51(e), (g), (p).  Upon learning this, Mr. Chen—who had been personally

10  recruiting his own birth tourism clients yet expensing them through You Win

11  USA—abruptly left the business in December 2014, taking multiple company assets

12  with him.  *See id.* ¶ 51(e), (g).  Mr. Chen then opened a new birth tourism business.

13       Mr. Chen's abrupt departure left You Win USA without any U.S.-based

14  contact.  Mr. Yan therefore convinced Ms. Li to step into that role—a role which by

15  then was limited to receiving, housing, and caring for expectant mothers once they

16  arrived in the U.S. from China.  Although several persons assisted Ms. Li with these

17  tasks, none of them knew of or were involved in any allegedly illegal part of the

18  business, such as any commission of visa fraud.  *Id.* ¶¶ 26 & n.2, 51(n), 51(m).  Ms.

19  Li remained in this caretaking role for less than three months, until March 3, 2015,

20  when federal agents executed search warrants related to its investigation of You Win

21  USA.  PSR ¶ 26.  You Win USA ceased all operations thereafter.

22       You Win USA did not always assist its clients in securing visas to come to the

23  United States.  Many clients had already secured visas by the time they contacted

24  You Win USA.  *See* PSR ¶¶ 40–41.  Others obtained visas on their own after

25

26  _____

27       [3] To clarify, Defendant Dongyuan Li ("Ms. Li") is not the same person as Lili Li.  Lili Li resides in China and directed You Win USA's operations in China; Ms.

28  Li resides in Irvine, California.

1   purchasing You Win USA's services.  *Id.*  And although You Win USA did help

2   some clients with their visas, that assistance came almost exclusively from You Win

3   USA's branch office in China, which was managed by Lili Li.[4]  PSR ¶¶ 30, 32.  Ms.

4   Li directly assisted only one You Win USA client—her personal friend X.Y.L.—in

5   providing false information on a visa extension application.[5]  PSR ¶¶ 34–38.

6   ## III.   LEGAL STANDARD

7        "Federal sentencing law requires the district judge in every case to impose 'a

8   sentence sufficient, but not greater than necessary, to comply with' the purposes of

9   federal sentencing . . . ."  *Freeman v. United States*, 564 U.S. 522, 529 (2011)

10  (quoting 18 U.S.C. § 3553(a)).  In determining the appropriate sentence for each

11  case, the sentencing court must consider the following factors:

12        (1) the nature of the offense and history and characteristics of the defendant;

13        (2) the purpose of sentencing;

14        (3) the kinds of sentences available;

15        (4) the Sentencing Guidelines;

16        (5) pertinent policy statements issued by the Sentencing Commission;

17        (6) the need to avoid unwarranted disparities among similar offenders; and

18        (7) the need to provide restitution to victims.

19  *See* 18 U.S.C. § 3553(a).

20        The "starting point" for all federal criminal sentences is for the Court to

21  determine the appropriate sentencing range under the U.S. Sentencing Guidelines.

22  *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018).  Thereafter, the Court may

23

---

24        [4] More accurately, You Win USA's branch office in China referred those
25  clients to an independent business/individual to assist them with the visa application
    process; it does not appear that Lili Li or other You Win USA employees directly
26  assisted with client visa applications.

27        [5] Ms. Li subsequently recalled discussing the visa application process with
    one other You Win USA customer, although she does not recall what specific
28  information they discussed.

either sentence the defendant within that range or adjust the sentence upward or downward outside the range if it deems appropriate in that particular case. *Gall v. United States*, 552 U.S. 38, 50 (2007).

## IV.   ARGUMENT

### A.   The PSR Correctly Calculated the Sentencing Guideline Range

The PSR correctly calculated Ms. Li's sentencing range under the U.S. Sentencing Guidelines. The Court should adopt that calculation, which is as follows:

| | | |
|---|---|---|
| Base Offense Level | 11 | [USSG § 2L2.1(a)] |
| 6 to 24 Fraudulent Documents | +3 | [USSG § 2L2.1(b)(2)(A)] |
| Aggravating Role | 0 | [USSG § 3B1.1(b)] |
| Adjusted Base Offense Level | 14 | |
| Acceptance of Responsibility | -2 | [USSG § 3E1.1(a)] |
| **Total Offense Level** | **12** | |
| **Criminal History Category** | **I** | |
| **Guidelines Range** | **10 to 16 months** | |

### 1.   The Number of Fraudulent Visa Applications Does Not Exceed 24

The PSR correctly determined that there is insufficient evidence showing that more than seven You Win USA clients (1) submitted a nonimmigrant visa application (2) that contained false statements (3) that were material and (4) that were made at the direction of You Win USA. In particular, the PSR found the evidence insufficient to show that You Win USA had any involvement in the majority of visa applications produced by the government during discovery, let alone that You Win USA specifically directed those clients to include false

information in their applications.[6]  PSR ¶¶ 40, 41, 59.  Many clients interviewed by federal agents stated unequivocally that You Win USA had no involvement in their visa applications; nothing in the visa applications themselves suggest You Win USA's involvement in them; and the few similarities among some of the visa applications produced are clearly explainable on grounds other than You Win USA's involvement.  *Id.*  Contrary to the government's apparent assumption, the mere fact that an individual was a client of You Win USA does not equate to that individual having submitted a fraudulent visa application at You Win USA's direction.  *See* PSR ¶ 59 n.9.  Accordingly, the Court should adopt the PSR's determination that only a three-level increase in offense level based on six to 24 fraudulent documents is appropriate.

### 2.    An Aggravating Role Enhancement is Inappropriate

The PSR also correctly determined that Ms. Li should not be subject to an aggravating role enhancement.  As the PSR notes, You Win USA's branch office in China, managed by Lili Li, was in charge of "recruit[ing] customers and assist[ing] the customers with their visa applications," among other things.  PSR ¶ 62.  Ms. Li, on the other hand, simply assisted with company finances at times and cared for expectant mothers once they arrived in the U.S.—which was by definition *after* their visa applications had been submitted and approved.  With only one exception, Ms. Li had no involvement in assisting the company's clients with their visa applications.  As a result, Ms. Li is "viewed as [an] average participant[] in the

---

[6] Although the PSR stated that it made these findings based on a clear and convincing evidence standard, PSR ¶ 59, the result is the same when the preponderance standard is applied.  By either metric, the fact remains that the government produced evidence sufficient to show only that seven visa applications contained false statements by You Win USA's hand.  As Ms. Li anticipates explaining in further detail in her response to the government's sentencing memorandum, the questionably-relevant data points that the government relies on to speculate as to the number of fraudulent visa applications is wholly insufficient to actually draw a connection between those applications and You Win USA.

1   scheme," and thus no aggravating role adjustment is appropriate.  PSR ¶ 65.  Indeed,
2   several courts have even found a *mitigating* role reduction appropriate based on
3   similar levels of involvement.  *See United States v. Murillo*, 284 F. App'x 982, 984
4   n.2 (3d Cir. 2008) (unpublished) (defendant received a two-level minor participant
5   reduction where he "personally only requested three [fraudulent] documents and did
6   not himself create the fraudulent documents"); *United States v. Petti*, 973 F.2d 1441,
7   1447–48 (9th Cir. 1992) (defendant entitled to a four-level minimal participant
8   reduction in a "smurfing" scheme because he was "not involved in the actual
9   'smurfing' of the money into the banks, or privy to all the mechanics of the
10  laundering operation, and that his role was 'subordinate' to [a co-defendant's],"
11  even though he generally understood the "critical functions" of the operation).
12      In addition, Ms. Li never supervised any criminally responsible participants in
13  the scheme, which is an additional and independent reason why an aggravating role
14  enhancement is unwarranted.  A threshold requirement for imposing an aggravating
15  role enhancement is that the defendant was the organizer, leader, manager, or
16  supervisor of "at least one participant—that is, a person who was criminally
17  responsible for the commission of the offense."  *United States v. Helmy*, 951 F.2d
18  988, 997 (9th Cir. 1991) (vacating sentence because district court failed to determine
19  whether defendant supervised or managed another criminally responsible
20  participant); *see also* USSG § 3B1.1 cmt. nn. 2–3.  "[M]ere unknowing facilitators
21  of crimes will not be considered criminally responsible participants."  *United States
22  v. Cyphers*, 130 F.3d 1361, 1363 (9th Cir. 1997).  Here, the persons that Ms. Li
23  managed were limited to cooks, drivers, and nannies who assisted expectant mothers
24  with day-to-day living after they arrived in the U.S.  PSR ¶ 26 & n.2.  There is no
25  evidence that any of them had any involvement in, or even knew of, any visa fraud
26  (or any other crimes) that You Win USA may have been committing.  As a result,
27  they are not criminally responsible participants.  And because Ms. Li did not
28  supervise or manage any criminally responsible participants, she is not eligible for

an aggravating role enhancement as a matter of law.

**B.    Section 3553(a) Factors**

**1.    Nature of the Offense**

As Ms. Li has admitted, she participated in a business that helped some of its customers submit nonimmigrant visa applications that contained false information. In addition, Ms. Li herself assisted her personal friend in submitting a visa extension application that contained false information.  Ms. Li has therefore pleaded guilty to one count of conspiracy to commit visa fraud and one count of visa fraud.

**2.    History and Characteristics of the Defendant**

Ms. Li is a mother to four children, including a seventeen-year-old daughter, twin six-year-olds girls, and an infant son.  PSR ¶ 90.  Ms. Li also cares for her 72-year-old widowed mother in Irvine, California.[7]  *Id.* ¶ 80.  Since 2003, Ms. Li has been the General Manager of a trading company that focuses on clothing and apparel sales.  *Id.* ¶ 100.  The company has 12 direct stores and 18 franchise stores located in China, and continues to operate in Ms. Li's absence through a team in China.  *Id.*  Ms. Li has also helped her husband with a successful skincare and cosmetics business that he runs in China.  *Id.* ¶ 87.  Ms. Li does not drink alcohol, does not use any illegal drugs or substances, and has no prior criminal history.  *Id.* ¶¶ 75, 98.  Ms. Li has the equivalent of an associate's degree in preschool education, and would like to be a preschool teacher.  *Id.* ¶ 99.

**3.    Ms. Li's Near-Death Experience While in Custody**

As briefly summarized in the PSR, Ms. Li suffered horrifically while in custody when two correctional officers left her unattended in a sweltering, unventilated van for over four hours.  PSR ¶¶ 92–96.  On April 8, 2019, after this Court concluded a detention hearing in this case, two correctional officers

---

[7] When Ms. Li was ten years old, her father suffered a fall while on a business trip and died.  PSR ¶ 84.  Thereafter, Ms. Li's mother had to financially support the family.  *Id.* ¶ 85.

transported Ms. Li from the Court back to the Santa Ana Jail in a van. Carroll Decl. ¶ 3, Ex. B. Upon arriving at the Santa Ana Jail, the officers parked the van in direct sunlight and exited the vehicle, leaving Ms. Li handcuffed, waist-chained, and ankle-chained in a narrow enclosed space in the van with no ventilation and no air-conditioning. PSR ¶ 93. The outside air temperature that day was approximately 84 degrees Fahrenheit,[8] *id.*, and the temperature inside the van quickly became substantially hotter.



10:46 a.m. – Correctional officers (circled) leave Ms. Li and another inmate inside the transportation van (circled).

Ms. Li was left in the van unattended in these conditions for a total of ***four hours***. At one point during those four hours, a police vehicle pulled up alongside and parked next to the van, and one of the correctional officers who originally left her in the van exited the police vehicle and walked around the perimeter of the van. Carroll Decl. ¶ 3, Ex. B. Another inmate who was locked in the van with Ms. Li attempted to draw that officer's attention by hitting the side of the van. *Id.*

---

[8] The PSR noted that it was 83 degrees, which appears to be a typographical error.

1    Eventually, Ms. Li saw another officer walk alongside the van.  Carroll Decl.

2    ¶ 3, Ex. B.  By this time, Ms. Li was suffering from extreme dehydration and heat

3    exhaustion, and was drifting in and out of consciousness; she believed at that point

4    that she would not make it out of the van alive.  *Id.*  Summoning what little physical

5    strength she had left, Ms. Li banged on the side of the van in an attempt to draw this

6    officer's attention.  *Id.*  Hearing this, the officer unlocked and opened the van and

7    removed Ms. Li from the vehicle.  *Id.*  Thereafter, Ms. Li received emergency

8    medical assistance and was eventually placed in an ambulance and transported to a

9    nearby emergency room.  *Id.*  Ms. Li received medical treatment and remained in

10   hospital for approximately thirty hours.  *Id.*  Unsurprisingly, this incident caused

11   Ms. Li substantial physical and long-lasting emotional harm.

12   The import of this terrible ordeal is that the need for Ms. Li's sentence to

13   provide specific deterrence has already been satisfied.  Ms. Li's time in custody has

14   been particularly horrific and more than sufficiently ensures that she will not

15   recidivate.



2:46 p.m. – Correctional officers and medical personnel approach the van after finding Ms. Li inside it.



3:03 p.m. – Emergency medical personnel transfer Ms. Li, covered in ice-packs, into an ambulance.

Area in which Ms. Li was confined inside the van.

## V.   CONCLUSION

As the PSR correctly concluded, a sentence of ten months' imprisonment is an appropriate sentence based on the facts of this case.  The Court should adopt the PSR and sentence Ms. Li accordingly, with a three-year period of supervised release to follow and a $200 special assessment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  December 4, 2019

BROWNE GEORGE ROSS LLP
    Thomas P. O'Brien
    Jennie Wang VonCannon
    David J. Carroll


By:        /s/ Thomas P. O'Brien
            Thomas P. O'Brien
    Attorneys for Defendant Dongyuan Li

-12-

DEFENDANT'S SENTENCING MEMORANDUM